Hillsborough, }
March 1, 1904. }

### CONGDON v. NASHUA.

The board of health of the city of Nashua have no authority to contract with the city physician for the payment of compensation in addition to the salary prescribed by ordinance, as remuneration for attendance upon small-pox patients who have been quarantined by order of the board.

ASSUMPSIT, to recover a balance of account for medical attendance upon small-pox patients quarantined by the board of health of the city of Nashua.

The plaintiff was city physician in 1902 and 1903, and as such received a salary of $400 per year. He was at the same time chairman and member of the board of health, at a salary of $100 per year. The board consisted of three members. After September 18, 1902, one of the members declined to act. On that day, the other member of the board agreed with the plaintiff that the

latter should attend the patients suffering from small-pox who had been quarantined by the board in a hospital established by them, and should receive for his services $10 per day. The plaintiff performed the service for 105 days, has been paid $440, and claims a balance of $610. After January 1, 1903, there were three members of the board of health, of which the plaintiff was one. He made a similar contract with the two other members, under which he claims payment for fifty-seven days. The services rendered were reasonably worth $10 per day. In 1902, the mayor and finance committee knew of the agreement that the plaintiff was to do this work for $10 per day, and agreed to it. January 2, 1903, the mayor informed the plaintiff that he would not be paid this sum, but must perform the services as city physician, and that he could have such assistance as was necessary.

Upon the agreement of the parties to the foregoing facts, the case was transferred from the September term, 1903, of the superior court by *Wallace*, C. J., upon the stipulation that if the plaintiff was not entitled to recover upon the facts under either contract, judgment should be ordered for the defendants. Portions of the city ordinances were made a part of the case and are referred to in the opinion.

*Burns & Burns* and *George B. French*, for the plaintiff.

*Doyle & Lucier*, for the defendants.

PARSONS, C. J. For all the time during which the services were rendered for which the plaintiff claims payment under the alleged contracts, the plaintiff held the office of city physician, and received the salary attached to the office in full payment for all his services as such physician. Nashua Ord., c. 4, s. 10. The ordinance creating the office of city physician made it his duty "to attend, under the general direction of the overseers of the poor, upon all sick paupers, and patients under the care of the city authorities." *Ib.*, c. 4, s. 9. The powers vested in the board of health of towns are by general law and the charter of the city vested in the city councils, to "be carried into execution in such manner, by such officers, and with such powers as the city councils shall determine." P. S., c. 50, s. 9; Laws 1853, c. 1404, s. 22. It was the duty of the city to care for the persons confined for the protection of the public because of their affliction with a contagious disease (*Labrie* v. *Manchester*, 59 N. H. 120), whenever such assistance was deemed wise or necessary by the board of health. Laws 1899, c. 100, s. 1. Such persons are therefore "patients under the care of the city authorities," upon whom the plaintiff as

city physician was bound to attend. That this duty was to be performed under the general direction of the overseers of the poor did not limit the plaintiff's duty as city physician. The language of the ordinance defining his duty expressly implies that he is to attend upon others than paupers; and, under the general statute, the city councils had power to commit the execution of a portion of the power vested in them as a board of health with reference to contagious diseases to the overseers of the poor and a city physician. If not paupers, the inmates of the small-pox hospital were patients under the care of the city authorities. Paupers and other patients afflicted with a contagious disease are not excepted from the class for which the city physician was required to furnish medical attendance. The purpose of the ordinance creating the office of city physician and prescribing his duties was to provide such medical attendance as the city was legally liable to furnish. If the board of health had power to contract in behalf of the city for medical attendance upon persons in quarantine, in case the city physician was unable, unwilling, or incompetent to furnish such attendance as was required, they had no authority to raise the salary of the city physician, or to bind the city to pay him more than the sum for which, by accepting the office, he agreed to perform its duties.

In the absence of information as to the powers conferred upon boards of health or health officers, it would be assumed that by the election of officers with such titles the city councils had expressly or impliedly invested them with the powers of like officers in towns. Such was doubtless the view upon which *Labrie* v. *Manchester*, 59 N. H. 120, was decided. The report of that case contains nothing tending to establish such assumption to be incorrect in fact as to the health officers of Manchester. In Nashua, it appears that the city councils have by ordinance provided for a board of health officers consisting of three persons, to be elected by the city councils at the commencement of each municipal year, and prescribed their duties. Nashua Ord., *c.* 4, *s.* 7; *Ib.*, *c.* 24. Legislative action has been had as to the time of the election of the health officers in common with other officers of the city, but no addition to their powers as defined in the ordinances of the city appears to have been made. Laws 1878, *c.* 165, *s.* 11; Laws 1883, *c.* 259, *s.* 2; Laws 1885, *c.* 159, *s.* 1; Laws 1889, *c.* 222, *s.* 1. Chapter 45, Laws 1897, substituting boards of health in the several towns for health officers, and providing for their appointment by selectmen instead of election by the town, does not apply to cities. *Ib.*, *s.* 3.

In Nashua, the duties of the board of health officers are the same in substance as those of health officers or boards of health in

towns for the prevention and removal of nuisances (P. S., *c.* 108 ; Nashua Ord., *c.* 24), with the exception that the execution of the power to make regulations is retained by the city councils, and the duty of the health officers is confined to carrying into execution ordinances and rules upon the subject made by the city councils. No power as to contagious diseases, such as is vested in health officers under sections 2 and 5, chapter 110, Public Statutes, appears to have been confided to the health officers of Nashua. If there is evidence not disclosed by the case from which it can be inferred that it was intended to entrust to them the execution of the power of quarantine, the fact that the city councils have provided another officer to supply the necessary medical attendance establishes that the furnishing of such attendance was not committed to the health officers. It appears to have been the purpose of the city councils to retain control over such expenditure ; for it is made the duty of the city physician, " in case of an alarm of any infectious or contagious disease, to give to either branch of the city councils, or any committee thereof, all such professional advice and counsel as they may request of him." Nashua Ord., *c.* 4, *s.* 9. There is nothing in the case tending to show that the health officers have been authorized to furnish medical attendance at the expense of the city to persons in quarantine. They therefore could not make a valid contract with a third person for that purpose, and it is not material to inquire as to the power of one or of two members of a board of three to make such a contract with one of their number. The city is not liable except by virtue of a valid contract. *Pettengill* v. *Amherst, ante, p.* 103.

Although the plaintiff's contract as city physician was to perform the service for the salary, it was within the power of the city councils to give or agree to give him additional compensation for service more onerous than was anticipated. The case states that the mayor and finance committee in 1902 knew of the agreement that the plaintiff was to do the work for $10 per day, and agreed to it; and that in 1903, and before the services were rendered under the second agreement, the mayor officially notified the plaintiff he would not be paid that sum. Whether the mayor and finance committee were in fact authorized to bind the city is not disclosed by the case. It is not suggested they had such authority as matter of law.

Whether, upon any facts that can be produced in evidence, an agreement by the city councils to give the plaintiff additional compensation for unexpected or unusual service can be found, is a question of fact not presented by the case and which is not material under the agreement that judgment should be rendered

for the defendants unless recovery could be had under either contract with the other health officers.    Whether justice requires that the plaintiff should be relieved from his agreement and allowed to try the fact, is a question for the superior court.    Under the agreement upon which the case is transferred, the defendants are entitled to judgment.

*Case discharged.*

All concurred.